785 So.2d 815 (2001)
STATE of Louisiana
v.
Dariel SMITH.
No. 2000-KK-1838.
Supreme Court of Louisiana.
May 25, 2001.
*816 Richard P. Ieyoub, Atty. Gen., Baton Rouge, Harry F. Connick, Dist. Atty., New Orleans, Jana Marie Lindner, Valentin Michael Solino, for Applicant.
Mark Anthony Vicknair, for Respondent.
PER CURIAM:[*]
An anonymous tip may provide probable cause for an arrest, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or reasonable suspicion for an investigatory stop, Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the suspect's illegal activity. See White, 496 U.S. at 332, 110 S.Ct. at 2417 ("[W]hat was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside informationa special familiarity with respondent's affairs."). However, White also indicated what kind of corroboration of contemporaneous details is generally not sufficient to provide reasonable grounds for an investigatory stop. The opinion observed that "the fact officers found a car precisely matching the caller's description in front of a particular location mentioned in the tip did not provide sufficient corroboration of the tip to indicate its reliability for "any one could have `predicted' that fact because it was a condition presumably existing at the time of the call." White, 496 U.S. at 332, 110 S.Ct. at 2417. The Supreme court recently reaffirmed that part of White in Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000). Although we granted the state's application to reverse the ruling below which suppressed, at least in part, evidence secured after an investigatory stop, we deem it appropriate to remand this case for reconsideration in light of White and J.L.
The anonymous tip in the present case that four African-American males were smoking marijuana in a car accurately predicted *817 the location where the police would find the car, the make, style, and color of the vehicle, and the number and race of its occupants. Officer Kevin Jackson and his partner spotted the car within three or four minutes of receiving the tip from the dispatcher and the officers immediately initiated a "felony vehicle stop" by pulling in front of the car to block any flight from the scene on the one-way street, turning on the red and blue lights of their police cruiser, and sounding their siren. The officers also illuminated the vehicle with a hand-held spotlight and ordered the car's occupants to raise their hands. The officers then directed the occupants to step out of the vehicle one person at a time, prompting two of the passengers, Wesley Payton and Jamal Cummings, to discard burnt marijuana cigarettes as they exited the vehicle, and a third, Deron Theodore, to drop a packet of cocaine from the rear window before he too climbed out of the vehicle.
After taking the three men into custody and securing the discarded marijuana cigarettes, officer Jackson ordered respondent from the vehicle, arrested him, and gave him his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officer then recovered the cocaine discarded by Theodore and began a field interview to identify the four arrested individuals. At that time, respondent informed officer Jackson that he had been "an active participant in smoking the marijuana," but had no knowledge of the packet that the officer had just recovered from the right side of the vehicle. After transporting the four individuals to jail, officer Jackson produced a waiver form which he read to respondent, who signed the document formally waiving his Miranda rights.
The state charged all four individuals with possession of marijuana in violation of R.S. 40:966. Following a guilty plea by Cummings, and the state's dismissal of the charge against Theodore, the magistrate judge for Orleans Parish conducted a hearing on Payton's motion to suppress the evidence on grounds that the police had acted solely on the basis of an anonymous telephone call which did not provide reasonable suspicion for an investigatory stop. Respondent joined in the motion. According to the minutes in the record, the court granted the motion with respect to respondent but denied it as to Payton.
It appears from the transcript of the hearing conducted on February 16, 2000, that the court granted the motion only as to one aspect of the encounter between officer Jackson and respondent. Specifically, the court ruled that while respondent had made his inculpatory statement after receiving his Miranda rights, Jackson secured his signature on the waiver form only after transporting him to the station house, and "[t]hat's too late." The judge therefore suppressed that statement as evidence at respondent's forthcoming trial. Although the record is incomplete, we presume that the court otherwise denied the motion as to respondent with regard to the seizure of physical evidence by the officers. The court of appeal denied the state's application for review. State v. Smith, 00-0879 (La.App. 4th Cir.5/30/00).
We granted the state's present application because the ruling of the magistrate conflicts with settled jurisprudence that "[s]pontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody." State v. Castillo, 389 So.2d 1307, 1310 (La.1980) (collecting cases). In the present case, officer Jackson testified at the hearing that after the arrests of the four individuals, he conducted a field interview *818 "in an attempt to identify the identity of all the subjects involved." According to the officer, "[a]t that time Mr. Smith came forward" and volunteered that he had been smoking marijuana. Because the officer's field interview asked for no more information than an individual might supply in response to booking questions as a routine incident of an arrest, Jackson's inquiries did not amount to interrogation for Miranda purposes. Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980) ("[T]he term `interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.") (emphasis added); see, e.g., State v. Mitchell, 421 So.2d 851, 852-3 (La.1982) (request for medical information at booking did not constitute custodial interrogation for Miranda purposes; defendant's response that he was a codeine addict properly admitted at his trial for possession of codeine). The failure of officer Jackson to secure a Miranda waiver from respondent before he made his voluntary statement therefore did not require suppression of the statement on Fifth Amendment grounds.
Nevertheless, even spontaneous statements may be suppressed on Fourth Amendment grounds as the fruit of an illegal arrest or seizure if they are not sufficiently attenuated from the primary illegality to represent the independent exercise of free will. State v. Fisher, 97-1133, p. 12 (La.9/9/98), 720 So.2d 1179, 1186 (ordering suppressed defendant's statements made in response to police questioning in patrol unit on the way to the station house, and his subsequent spontaneous admission that the victim "got what he deserved"); see also United States v. Robinson, 932 F.Supp. 1271, 1278-79 (D.N.M.1996) (suppressing spontaneous statements made by the defendant within 10 to 15 minutes of his illegal arrest); United States v. Duffy, 796 F.Supp. 1252, 1260-61 (D.Minn.1992) (suppressing defendant's spontaneous statements to police officers in their squad car on the way to jail immediately after an illegal arrest). That the accused "may have been properly informed of his constitutional rights and waived them, while relevant, does not alone break the causal link" [between an illegal seizure and a subsequent statement]. Fisher, 97-1133 at 11, 720 So.2d at 1186 (citing Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982)).
In the present case, the magistrate implicitly rejected a Fourth Amendment basis for suppressing respondent's statement when it denied the motion as to Payton. However, the court did so without benefit of the Supreme Court's opinion in J.L., decided barely a month later. In J.L., the police received an anonymous tip that a young African-American male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. The officers arrived at the location within five or six minutes of receiving the report from the dispatcher and saw three African American males standing at the bus stop, including the defendant, a juvenile, who was wearing a plaid shirt. Although the police did not see the firearm and observed no other unusual or suspicious behavior, the officers immediately approached the defendant, told him to place his hands on the bus stop, and frisked him, removing a gun from his pocket.
In affirming the judgment of the Florida Supreme Court that the trial judge had properly suppressed the weapon as the fruit of an unlawful stop, the Supreme Court observed that "[i]f White was a close case on the reliability of anonymous tips, *819 this one surely falls on the other side of the line." J.L., 529 U.S. at 271, 120 S.Ct. at 1379. The Court explained:
The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility.... All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L....
An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.
J.L., 529 U.S. at 271, 120 S.Ct. at 1379 (citations omitted)
In the present case, the testimony of officer Jackson made clear that he and his partner acted solely on the basis of the anonymous tip relayed by the police dispatcher and initiated the "felony vehicle stop" immediately after they observed the car occupied by four African-American males. The officers then seized the vehicle and its occupants by turning on their flashing lights, illuminating the scene with their spotlight, and ordering the occupants from the car. See State v. Chopin, 372 So.2d 1222, 1224-5 (La.1979) (police officers seized the defendant when they "swung the patrol car around into this path, switched on the bright lights, and braked not more than three or four feet in front of him."). The discarding of the burnt marijuana cigarettes by Payton and Cummings in response to that assertion of official authority constituted an abandonment of that evidence only if the initial seizure on basis of the anonymous tip were lawful. Cf. State v. Reed, 284 So.2d 574, 575 (La.1973) ("Property is not considered abandoned when a person throws away incriminating articles due to the unlawful activities of police officers.").
The validity of the investigatory stop in this case is a determination for the trial court in the first instance. La.C.Cr.P. art. 703. Accordingly, on remand the magistrate is to determine, in light of the Supreme Court's decision in J.L., whether the initial seizure of the vehicle by officer Jackson was legal and, if not, whether the police came at their evidence, including the two marijuana cigarettes discarded by Payton and Cummings and respondent's statement to Jackson, by exploiting that primary illegality or by a means sufficiently independent to be purged of the primary taint. Fisher, 97-1133 at 12, 720 So.2d at 1186.
REVERSED AND REMANDED.
NOTES
[*] Retired judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision; Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.