911 So.2d 894 (2005)
STATE of Louisiana, Appellee
v.
Antonio Dejuan DEMMING, Appellant.
No. 40,033-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 2005.
*895 W. Jarred Franklin, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, Dhu Thompson, Shenequa L. Grey, Assistant District Attorneys, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
The defendant, Antonio Dejuan Demming, pled guilty to two counts of armed robbery and one count of first degree robbery, reserving the right to appeal the denial of his motion to suppress his confession pursuant to State v. Crosby, 338 So.2d 584 (La.1976). As to each count, he was sentenced to 15 years at hard labor to run concurrently, without the benefit of probation, parole or suspension of sentence. The defendant now appeals claiming that his confession to the robberies should have been suppressed because of statements of inducement made at the beginning of his taped confession.

Facts
As to count one, defendant and his co-defendant, Lorenzo Taylor, were accused of the armed robbery involving a taxi driver. They got into the cab and, while brandishing guns, they demanded money and took a wallet containing $70. As to count two, defendant and Taylor, on the same day as count one, robbed another cab driver at gunpoint of $35, a wallet and cell phone. As to count three, defendant is accused of robbing someone at gunpoint.
At the hearing on the motion to suppress, the State presented the taped recording of defendant's interrogation by Detectives Lott and Oster. At the beginning of the tape, Detective Lott read the following Miranda warning printed on the front of a waiver of rights card:
You are under arrest for your part in the offense of armed robbery. I hereby notify you that you have a right to remain silent and you are not required to make any statement unless you want to do so voluntarily. Anything you say will be used against you in a court of law. You also have a right to consult with your attorney and to have him present with you. If you cannot afford an attorney, one will be appointed to represent you.
Demming was then asked if he understood these rights and invited to initial the front side of the card. The tape paused for his initialing, and the actual card demonstrating his initials was presented in evidence.
Detective Lott then read the back of the Miranda card which stated:
While you are not required to make any statement, you may waive those rights just explained to you and you are given the privilege of saying anything you want to about this case. Now with this understanding and waiving those rights just explained to you, do you wish to make a statement and tell how this happened?
After reading this side of the card, which bears Demming's signature, Detective Lott continued speaking and the following exchange immediately occurred:
Det. Lott: "Do you want to tell us what was going on and what happened? [pause] In your life?
Det. Oster: "[unclear phrase on tape] tell the truth man?"
Defendant: "Man, look . . ."
Det. Oster: "You can't hurt yourself."
Defendant: "[continuation of his responsetape unclear] Ya'll might think I'm lying. [tape unclear] . . . Sometimes I don't even understand myself."
Det. Oster: "The things that you do?"

*896 Defendant: "(unclear response) I really can't even explain why I be doin' . . . (unclear response) I just don't know, man. I'm serious. Ya'll may think I'm lying, I just . . ."
Det. Lott: Well, I understand . . . that probably because of the influence of drugs and alcohol, choices were made that you may not make otherwise. Is that pretty much a correct statement?"
Defendant: "Yeah"
Det. Lott: "Okay . . ."[1]
After the conclusion of the above dialogue, Demming kept talking to the detectives and ultimately rendered his confessions of the crimes. The tape reveals that throughout the interrogation, the defendant did not stop the questioning or indicate any wish not to continue.
At the suppression hearing, Detective Lott testified that neither she nor Detective Oster promised defendant anything of value, such as leniency or probation, in exchange for his statements. On cross examination, defense counsel asked Detective Lott whether she affirmatively asked Demming what his statement "I just don't know," meant. She stated that when he continued his statement, it was her impression he meant that he didn't know why he committed the robberies.
On cross-examination, Detective Oster clarified that his initial question to Demming was "to the effect, `Do you want to tell the truth?'" Oster stated that he then told the defendant "You can't hurt yourself" because defendant knew that he was already under arrest. Therefore, whether he told the truth would not affect whether he was arrested and charged. Oster also testified that he never told the defendant that, by telling the truth, he would not be prosecuted or would not get into trouble. Finally, he admitted that he made the statement to try and get the defendant to confess.
Defendant testified that he recalled Detective Lott reading the Miranda rights card and that he signed the card. He thought that he merely was acknowledging that he read the card, not that he was waiving his right to remain silent and his right to counsel. When Detective Lott asked him "to tell us what happened," he began talking to her because he thought it was "just conversation." When Detective Oster stated "You can't hurt yourself," he thought that meant he wasn't going to get into trouble and there would be no consequences, so he continued. The defendant specifically never asked Detective Oster what that statement meant.
On cross-examination, defendant testified that he was 24 years old and had attended special education classes through the ninth grade. He described his literacy skills as limited. He knew of his right to remain silent and understood when Lott said "you don't have to make a statement voluntarily." He understood what the Miranda card meant by "anything that you said would be used against you in a court of law," and his "right to consult an attorney." Additionally, he understood the phrase, "while you're not required to make any statement, you may waive those rights." Even though he cannot read, defendant said that when Detective Lott read that phrase to him, he understood it and knew that any statement could be used against him.
*897 The trial court denied the motion to suppress, ruling that based on the totality of the evidence, the statements were freely and voluntarily given.

Discussion
The trial court rejected Demming's testimony that he understood Oster's comment, "you can't hurt yourself," to mean that there would be no consequences for his statements to the detectives. Demming argues that such statement was an improper inducement, requiring the suppression of his confessions. From reviewing the context of Oster's statement and based upon the jurisprudence, we agree with the trial court's ruling that Demming's statements were free and voluntary.
Before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451. At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt that the confession was free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements or promises. State v. Hills, 354 So.2d 186 (La.1977); State v. Johnson, 36,014 (La.App. 2d Cir.6/12/02), 821 So.2d 652; State v. Hahn, 526 So.2d 260 (La. App. 2d Cir.1988), writ denied, 532 So.2d 150 (La.1988).
As a matter of federal constitutional law, any confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); State v. Roddy, 33,112 (La.App. 2d Cir.4/7/00), 756 So.2d 1272, 1276, writ denied, 00-1427 (La.5/11/01), 791 So.2d 1288. Even the slightest inducements held out by a person in authority such as a police officer or a prosecutor may render a confession involuntary. State v. Jackson, 381 So.2d 485 (La.1980); State v. Hall, 434 So.2d 517 (La.App. 2d Cir.1983); writ denied, 440 So.2d 759 (La.1983).
The question of voluntariness of a confession, including a determination of the defendant's state of mind, must be resolved from the facts and circumstances of the particular case. State v. Hahn, supra, 526 So.2d at 263. Thus, the trial judge must consider the "totality of the circumstances" in arriving at a finding that the confession is admissible. Id. The admissibility of a confession is a question for the trial judge whose conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility should not be overturned on appeal unless they are not supported by the evidence. State v. Richardson, 33,272 (La.App. 2d Cir.11/1/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151. We place great weight upon the trial court's factual determinations because of that court's opportunity to observe witnesses and assess credibility. State v. Roddy, supra.
In State v. Hall, supra, the officer admitted that after giving the defendant the Miranda rights, he sought defendant's cooperation for a statement by indicating that "everything would be probably a lot better than it would be waiting on the evidence from the crime lab and everything." This court found no inducement, holding that "[t]he comment amounted to no more than a mild exhortation to tell the truth." Id. at 519. Accord, State v. Dison, 396 So.2d 1254 (La.1981) (where the officer told the defendant that in the past, anybody that tried to help themselves, usually got help); and State v. Vernon, *898 385 So.2d 200 (La.1980) (where the court held that "the mere fact that one officer told Vernon that the district attorney would be advised of any cooperation was not sufficient inducement.") Regarding such comments, our highest court in State v. Petterway, 403 So.2d 1157, 1160 (La.1981), observed:
Statements of this type, rather than being promises or inducements designed to extract a confession, are more likely musings not much beyond what this defendant might well have concluded for himself.
In this case, the complete context of Detective Oster's statements, which were virtually posed together as a single question, shows that he inquired: "Do you want to tell the truth, you can't hurt yourself." Thus, under the jurisprudence, the officers informing the defendant that telling the truth could not hurt him is not an inducement which renders Demming's subsequent confession involuntary. State v. Hall, supra. Likewise, in view of the overall context in which Demming had just been warned that anything he said would be used against him in court, Detective Oster's comment did not diminish that warning in such a manner as to cause confusion.
With the trial court's determination of voluntariness entitled to great weight, we find the assignment of error without merit. Defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] There is no transcription of Demming's interrogation in the record, only the tape. Demming's statements heard immediately after Detective Oster's comment, "you can't hurt yourself," are unclear, and his appellant brief makes no argument concerning those statements. Significantly, both men appear to be talking over each other at that moment, thus producing the difficulty in understanding a small portion of Demming's statements.