965 So.2d 610 (2007)
STATE of Louisiana, Appellee
v.
Ira Jerome ROSS, Appellant.
No. 42,399-KA.
Court of Appeal of Louisiana, Second Circuit.
August 29, 2007.
*613 Kenota Pulliam Johnson, for Appellant.
Paul Joseph Carmouche, District Attorney, Lea R. Hall, Jr., Dhu Thompson, Tommy Jan Johnson, Assistant District Attorneys, for Appellee.
Before BROWN, DREW and MOORE, JJ.
DREW, J.
Ira Jerome Ross was convicted as charged of attempted second degree murder and sentenced to 50 years at hard labor without benefits. He appeals. We affirm.

FACTS
On October 5, 2003, Michael Parker was playing dominos with his nephew, Tawon, and cousin, Matthew, outside Vanessa Prim's Shreveport home on 71st Street. A tan/brown SUV rolled slowly past the home, then returned minutes later, whereupon three masked gunmen jumped out and began shooting. Parker dropped to the ground, hid behind a column, and ran in the house. Parker and Tawon each saw two of the gunmen, but couldn't see their faces. Parker suffered multiple gunshot wounds and underwent surgery, which left a bullet too near his heart to be removed.
Scott Marlan of the Shreveport Fire Department was driving eastbound on East 70th Street near Thornhill when he heard loud popping noises and saw a tan SUV parked at the intersection of Thornhill and East 71st Street. Both passenger doors were open and two men were standing outside, firing weapons at a residence. Marlan turned his vehicle around and watched the men leave the scene in the SUV. He called 911 and reported the shooting and the SUV's tag number while following the vehicle onto I-49 southbound where Shreveport Police Officer John Stratton, driving a marked police vehicle, took over the pursuit. Marlan continued to follow the chase.
As Stratton pursued the SUV, it began traveling at a high rate of speed and exited I-49 onto the westbound Highway 3132 ramp. Stratton's dashboard-mounted video camera documented the high-speed chase and the videotape was shown to the jury. As Stratton followed the SUV on the ramp, a rear passenger of the SUV leaned out and pointed a long weapon at Stratton's vehicle. Stratton heard a loud pop, sounding like gunfire hitting his windshield. Stratton never stopped his pursuit, and never lost sight of the SUV, within which he clearly saw three men. The SUV twice swerved out of control on the wet roads, traveled against traffic on Saint Vincent Avenue, then abruptly stopped in a ditch on East 78th Street. One man jumped out and pointed a long gun at Stratton. The men fled on foot.
A K-9 unit tracked the men to a house on West 79th Street. The officers conducted a knock and talk, encountering William Hall, Derrick Grant, and this defendant, Ira Jerome Ross. The men, who were sweaty, nervous, and reluctant to talk, were advised of their Miranda rights. None of the three lived there, but the house belonged to Grant's girlfriend, Lasonia *614 Haley. A protective sweep revealed muddy clothes and three pairs of muddy tennis shoes.
Ross had borrowed the rental SUV from Haley, with the understanding that he would go to the store. She next saw the SUV abandoned off West 78th Street. She consented to a search of her residence, which revealed an assault rifle and empty magazine clip. Magazines containing live cartridges were found in the console of the SUV. Haley testified that she had no prior knowledge of the existence of any of the weaponry.
Another assault rifle was recovered from under another house down the street, and a live cartridge and a purple bandana were found in the backyard. Ross was taken into custody and transported to LSU Hospital, where he was checked out and taken to jail. Det. Rod Johnson conducted an interview with him in his office, where Ross was again advised of his Miranda rights. Ross gave a DNA sample but made no statement at that time.
Det. Shawn Parker contacted Ross to discuss an earlier shooting that had injured him. After administering Miranda, Det. Parker asked the defendant if he knew who shot him on September 26. Ross said he did not know his name but he knew his face. Det. Parker asked the defendant if the person who shot him on September 26 was the same person who was shot on October 5. Ross answered affirmatively, saying he was afraid when he saw the man who had shot him and he "did what he had to do."
At Prim's house were found spent shell casings from the shoulder of the road, bullet holes in the home, and slugs recovered from inside the house.
The location of the shell casings indicated that two different caliber firearms were fired from the street towards the front porch area. Many of the fired casings and a bullet projectile were positively matched to the two assault rifles found under houses on West 79th Street.[1] However, DNA analyses of the rifles were inconclusive.
The defendant was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:30.1 and 14:27. After his conviction, a PSI was ordered and reviewed by the trial court before sentencing. A timely motion to reconsider sentence was denied. Our review of this case centers on four issues.
Sufficiency
The defendant contends that:
 the evidence presented at trial was insufficient to support the defendant's conviction;
 the evidence was insufficient regarding his identity as a perpetrator;
 the only evidence linking the defendant to the crime was his presence when the other co-defendants were arrested;
 no witnesses saw him during the commission of the crime;
 no witnesses could identify the defendant at trial;
 the victim could not identify the defendant as the individual who shot him;
 reasonable doubt exists as to his guilt; and

*615  his conviction should be reversed and the sentence vacated.
The state notes that:
 appellate courts do not assess credibility or reweigh evidence;
 the defendant left a trail of evidence that brought police to his doorstep within a short period of time following the shooting; and
 the evidence is sufficient to support this conviction.
Our law on sufficiency is well settled.[2]
La. R.S. 14:24 regarding principals provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Relative to these facts, second degree murder is a homicide committed with the specific intent to kill or to inflict great bodily harm, or when the offender is engaged in the "perpetration or attempted perpetration of . . . [a] drive-by shooting . . ., even though he has no intent to kill or inflict great bodily harm." La. R.S. 14:30.1.
A "drive-by shooting" means the discharge of a firearm from a motor vehicle on a public street or highway with the intent either to kill, cause harm to, or frighten another person. La. R.S. 14:37.1; State v. Gipson, 28,113 (La.App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402.
*616 Our jurisprudence requires that attempted second degree murder requires the specific intent to kill. State v. Brooks, 499 So.2d 741 (La.App. 3d Cir.1986). Our jurisprudence relative to drive-bys and the specific intent to kill is well settled.[3]
Viewed in the light most favorable to the prosecution, both the direct evidence and the conclusions that can reasonably be inferred from the circumstances are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime of attempted second degree murder, including the specific intent to kill. See State v. Sutton, supra; State v. Owens, supra. The record further reflects that the state negated any reasonable probability of misidentification, thus carrying its burden of proof that the defendant was a perpetrator of the crime of attempted second degree murder. See State v. Powell, supra.
Ineffectiveness
The defendant argues that:
 the defendant's trial attorney, William Huguet, filed a motion to provide for effective assistance of counsel and of objection to appointment;
 Attorney Huguet advised the trial court of his inexperience in the area of criminal law and noted that he had only been licensed to practice law for 15 months prior to his appointment to represent Ross;
 Attorney Huguet lacked the requisite experience by which to adequately represent the defendant on this charge; and
 concludes that the outcome would have been different if he had been represented by an attorney with more experience.
The state argues that:
 the defense fails to point to even one factor that would suggest ineffective assistance of counsel;
 Mr. Huguet's motion to withdraw is the only basis for the defense's claim of ineffective assistance of counsel; and
 these general allegations are insufficient to support this assignment of error.
Our law on ineffectiveness of counsel is well settled.[4]
*617 Ross has not alleged and certainly didn't prove any specific grievous errors of trial counsel. He has not shown the reasonable probability that, but for such error, the result of the proceedings would have been different. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The state correctly argues that defense's arguments under this assignment of error are vague and conclusory. Furthermore, the record supports the conclusion that Mr. Huguet's representation of the defendant did not fall below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. See Strickland, supra. He made appropriate arguments and objections, effectively cross-examined the state's witnesses, and presented witness testimony on behalf of the defendant. Mr. Huguet provided Ross a more than adequate defense.
Suppression
The defendant's motion sought to suppress inculpatory statements taken on September 29, 2003, and October 6, 2003, as the result of alleged unlawful and unconstitutional questioning. The record reflects that the Ross was being treated at LSU Health Sciences Center for wounds he sustained in a shooting that occurred on September 26, when he was interviewed by Det. Shawn Parker and Det. Chris Ray on September 29. Det. Parker testified that *618 Ross was coherent, alert and aware of his surroundings, and told him that the shooting occurred at 411 West 64th Street after two men came to his house, accused him of stealing some rims, then shot him four times. Det. Ray's testimony matched that of Det. Parker.
Ross was arrested on October 5 after the second incident. Corp. Derrick Brown initially advised Ross of his Miranda rights. When Det. Rod Johnson arrived, he again read the defendant his Miranda rights and obtained a DNA sample from the defendant. Det. Johnson testified that Ross never invoked his right to remain silent or to an attorney. He was cooperative and signed a rights waiver form, but avoided talking about the October 5 shooting, and made no incriminating statements.
Det. Johnson then advised Det. Parker that Ross was in custody without discussing his (Johnson's) conversations with the defendant. Det. Parker arrived at the city jail on October 6, Mirandized the defendant, and secured another signed rights waiver form, which was misplaced. Ross spoke voluntarily, was not promised anything, and said about what he had said in September.
Det. Parker asked Ross if the man who shot him in September was the same man who was shot on October 5. The defendant agreed, stating he only knew the man by his face. Det. Parker denied tricking Ross into talking, and affirmed that both statements were freely and voluntarily made.
The court denied the motion to suppress, ruling:
 that the September 29 statement was not the result of a custodial interrogation;
 even so, it was freely and voluntarily given and made with a knowing and intelligent waiver of the Miranda rights;
 that the state met its burden of proving that a knowing and intelligent waiver of the defendant's Miranda rights was made before the October 6 statement, and that it was freely and voluntarily given.
Ross argues that:
 the trial court erred in denying his motion to suppress because the statements were obtained without proper waivers of rights;
 statements made by the defendant on September 29, 2003 (before the instant crime) and one week later (after the instant crime) were both involuntary;
 he was suffering from gunshot wounds at the time of the first statement;
 no Miranda warnings were given before the October 6 statement;
 that statement was unrecorded, vague, confusing, and misleading regarding which incident was being asked about;
 because of this significant break (one to 11 hours, after spending a night in jail) in the interrogation, the detective should have re-advised him of his rights;
 Det. Johnson's recollection about his inculpatory statement was inconsistent with that of Det. Parker; and
 he is not highly educated.
The state notes that:
 the first statement was taken at the hospital and not the police station;
 it was not a custodial interrogation and Miranda did not apply;
 the defendant was advised of his Miranda rights before he confessed;
 the defendant exhibited no signs of being under the influence of medicine *619 at the time of the statement, nor did he exhibit any outward manifestations of duress or physical pain;
 the defendant gave a nearly identical statement to Det. Parker on October 6, belying his claim of lack of clarity of mind at the September 29 statement;
 with regard to the October 6 custodial statement, the defendant was advised of and waived his Miranda rights at least three times before the interview (first by Corp. Brown, then by Det. Johnson and finally by Det. Parker);
 the questioning by Det. Parker was not made under false pretenses or improper influences;
 the defendant had the option to not answer the questions; and
 at no time during the second statement did the defendant invoke his right to remain silent.
Our law on the admissibility of confessions is well settled.[5]
*620 The state proved beyond a reasonable doubt the free and voluntary nature of the defendant's statements, and that he knowingly and intelligently waived his Miranda rights. Additionally, the September statement was clearly non-custodial.
Excessiveness
Before sentencing, the trial court noted:
 its review of the presentence investigation report;
 the serious physical injuries sustained by the victim;
 the house being riddled with bullets;
 the high-speed chase during which a weapon was pointed at a law officer;
 the defendant's continued denial of guilt and lack of remorse;
 the sentencing considerations set forth in La. C. Cr. P. art. 894.1; and
 that justice required a sentence of 50 years at hard labor without benefits.
Ross claims that the trial court failed to particularize the sentence, resulting in an excessive sentence. He argues that this record does not warrant the maximum sentence, and it must be vacated and set aside as excessive. The state argues that the sentence does not shock the sense of justice, and there is no abuse of discretion, considering the violent nature of the crime and the potential for multiple victims.
Our law on review for excessiveness of sentence is well settled.[6] When the senselessness, danger, and reprehensible nature of defendant's crime is considered, this sentence of 50 years at hard labor is clearly justified.

*621 DECREE
The defendant's conviction and sentence are AFFIRMED.
NOTES
[1] It was determined that 13 of the fired cartridge casings in Exhibit S-76 were fired from the rifle in Exhibit S-101. The fired cartridge casings in Exhibit S-75 were consistent with the rifle in Exhibit S-104, but a positive match could not be made. A bullet projectile in Exhibit S-77 (3-E) was positively identified as having been fired from the rifle in Exhibit S-104.
[2] The question of sufficiency of evidence is properly raised by a motion for post verdict judgment of acquittal. State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992).
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
[3] La. R.S. 14:27(A) provides that any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66. It is of no consequence whether defendant, in firing his weapon into a group of people, intended to hit one person or several people. In State v. Tyler, 342 So.2d 574 (La.1977), U.S. cert. denied, the defendant was convicted of first degree murder after firing a gun into a crowd. The Supreme Court found that the jurisprudence supported the proposition that shooting into a crowd indiscriminately with intent to kill someone was an assault with intent to kill each of them. See State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, U.S. cert. denied, ("clearly an offender who uses a high-powered assault rifle and shoots indiscriminately through a door at a group of people specifically intends to kill the victims"); State v. Severin, 04-326 (La.App. 5th Cir.9/28/04), 885 So.2d 609, writ denied, 2004-2805 (La.3/11/05), 896 So.2d 64 ("the testimony elicited at trial that the defendant fired his gun into a crowd of people is sufficient to satisfy the intent requirement of this statute").
[4] As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle by which to raise such a claim. Id. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La. App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.
[5] In reviewing the correctness of the trial court's pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. State v. Young, 39,546 (La.App.2d Cir.03/02/05), 895 So.2d 753, citing State v. Sherman, 04-1019 (La.10/29/04), 886 So.2d 1116.

At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288. See La. C. Cr. P. art. 703.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D); State v. Bowers, 39,970 (La.App.2d Cir.8/19/05), 909 So.2d 1038; State v. Roddy, supra. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Bowers, supra; State v. Roddy, supra.
The question of voluntariness of a confession, including a determination of the defendant's state of mind, must be resolved from the facts and circumstances of the particular case. State v. Demming, 40,033 (La.App.2d Cir.9/21/05), 911 So.2d 894.
The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, U.S. cert. denied; State v. Dailey, 607 So.2d 904 (La.App. 2d Cir.1992). Also State v. Brown, XXXX-XXXX (La.4/12/05), 907 So.2d 1. Great weight is placed upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Thibodeaux, supra; State v. Roddy, supra. Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Bowers, supra; State v. Henderson, 31,986 (La.App.2d Cir.8/18/99), 740 So.2d 240.
In proving an intelligent waiver of the rights to silence, protection against self-incrimination and counsel, the state need not show that a defendant was aware of the full evidentiary significance of his statements. See State v. Mitchell, 421 So.2d 851 (La. 1982); State v. Warren, 536 So.2d 529 (La. App. 1st Cir.1988). Moreover, as the United States Supreme Court noted, a suspect's awareness of all the crimes about which he could be questioned is not relevant to waive the Fifth Amendment privilege against self-incrimination. See Colorado v. Spring, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987).
In State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382, the court ruled that the defendant's statement to police was voluntary, even if they did not tell him that the officer had died and that defendant was a suspect in his murder. The court noted however, that failure to inform the defendant that he was a suspect in the officer's death was certainly a relevant factor in reviewing the totality of the circumstances under which defendant made the incriminatory remarks. Nonetheless, the court found the statement itself provided ample evidentiary support for the trial court's determination that the statement was made voluntarily.
However, the Supreme Court has stated that "[p]loys to mislead a suspect . . . that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns." Illinois v. Perkins, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990); State v. Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108, U.S. cert. denied.
[6] The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385. Here, the record shows an adequate articulation of the factual basis for the defendant's sentence and ample compliance with La. C. Cr. P. art. 894.1.

Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.